**FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **INDICTMENT NO.** |
| | ) | **1:12-CR-350** |
| **v.** | ) | |
| | ) | |
| **JENNIFER CHEN,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

### DEFENDANT CHEN'S REPLY TO THE GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNT ONE AS BARRED BY THE STATUTE OF LIMITATIONS

**1) Absent a Tolling Under §3292, the Allegations in the Indictment Are Not Within The Statute of Limitations.**

    a) **The Court should not accept the Government's allegation that the conspiracy was in existence up to February of 2010**.

The Government argues that because the indictment alleges the conspiracy was in existence up to February of 2010 "nothing more is required" See (Govt. Response pg. 9). While it is true that the court must accept the facts alleged in the indictment as true, the court need not accept the indictments *conclusions* about the facts. The fact that the Government claims that its allegations, if true, would constitute an overt act in furtherance of the conspiracy does not make it so. If indictment alleged

"The defendant ate breakfast on in February of 2010" as an overt act, the court would of course be free to reject the conclusion that it was an act in furtherance of the conspiracy. The court is equally as free to reject the Government's conclusions that the April 2008, April 28, 2008 and February 2010 acts of concealment were furtherance of the conspiracy.

b) **Assuming there was no tolling of statute of limitations under §3292, the Government must prove that after October 17, 2007, five years prior to the indictment on October 17, 2012: 1) an overt act in furtherance of the conspiracy occurred 2) the conspiracy was ongoing at the time the overt act was committed**.

As stated by the Government in their response:

In a conspiracy prosecution brought under § 371 the government in order to avoid the bar of the limitation period of § 3282 must show the existence of the conspiracy within the five years prior to the return of the indictment, and must allege and prove the commission of at least one overt act by one of the conspirators within that period in furtherance of the conspiratorial agreement." *United States v. McNair*, 605 F.3d 1152 (11th Cir. 2010) (quoting *United States v. Davis*, 533 F.2d 921, 926 (5th Cir. 1976)). See also *Grunewald v. United States*, 353 U.S. 391, 396, 77 S. Ct. 963, 969–70 (1957) (addressing a three-year limitations period and concluding the government

must prove that conspiracy was still in existence at beginning of limitations period and that at least one overt act was performed after that date); *United States v. Dynalectric Co.*, 859 F.2d 1559, 1564 n.6 (11th Cir. 1988) (holding if an overt act is necessary for the commission of the conspiracy, then "the indictment must charge and the evidence at trial must show that an overt act in furtherance of the conspiracy was made within the limitations period"); *United States v. Butler*, 792 F.2d 1528, 1533 (11th Cir. 1986) (holding that "the statute of limitations is satisfied if the last overt act alleged and proved occurs within the limitations period"). (Govt. Response pg. 8)

c) **The indictment only alleges three acts inside the limitations period, each of which are acts of concealment.**

i) April 2008, *Id.* pg. 28, ¶ 35.eee. - "as part of an effort to conceal the conspiracy by retrieving a laptop containing incriminating information."

ii) April 28, 2008, *Id.* pg. 29, ¶ 35.fff. - "CHI-CHENG GUNG, a/k/a 'Curtis Gung,' sent an email to APEGO employee E.T., stating that one option for dealing with defendant GUNG's recently terminated assistant, AC., was to '"File crime and arrest [AC.] but think about

3

the Anti-dumping information released to US customs by [AC.] if

she is really piss [sic] off."'

iii) February 2010, *Id.* pg. 29, ¶ 35.ggg. – "JENNIFER CHEN warned

the employee in person at the company's head office in Georgia not

to disclose what the employee had learned…"

**d) The central criminal purposes of the conspiracy were to import lined paper products from China by means of fraudulent documents, at less than the true weight, with false certification as to value, and by the payment of less than the amount duty legally due.**

In its first paragraph, the indictment explicitly identifies the central

criminal objectives of the conspiracy as to import lined paper products from

China by means of fraudulent documents, at less than the true weight, with

false certification as to value, and by the payment of less than the amount

duty legally due. *Id.* pg. 2, ¶ 1(a-b).  The indictment demonstrates that the

goals of the conspiracy were tied to a clear timeframe leading up to the

importation, the importation, and arguably shortly after importation.  In no

way were the goals focused on what happened 7 to 8 months or years

afterwards.

**e) The central criminal purposes of the conspiracy were obtained prior to the acts of concealment in April 2008, April 28, 2008 and February 2010.**

The objectives of the conspiracy were complete once the paper products made it through customs and to the buyers without paying the amount legally due.  This occurred prior to October 17, 2007, and prior to the acts in April 2008, April 28, 2008 and February 2010 that were taken to cover up the already completed crime.

It appears that the conspiracy ended around August or September of 2007.  The indictment identifies the imports as having occurred "from in and about May 2006 through in or about August 2007." *Id.* pg 8, ¶ 29.  This conclusion is further supported by the September 10, 2007 e-mail which declared "Case closed…Yay!" *Id.* pg. 28, ¶ 35.ddd.

The Government points to two e-mails, (September 5, 2007, *Id.* pg. 27, ¶ bbb.) and (September 29, 2007, *Id.* pgs. 27-28, ¶ 35.ccc.) to support their argument that the conspiracy was ongoing after September 10, 2007.  However, the e-mail from ¶ 35.ccc. was misdated in the indictment and was actually sent on June 29, 2007 not September 29, 2007.  As such, only one e-mail was sent in September of 2007 and it was sent five days before the "Case closed" e-mail on the 10th.

Even assuming the conspiracy was in existence up to and some period of time after September 2007 and even after October 17, 2007, there are no facts supporting the conclusion that the conspiracy was still ongoing at the

time the April 2008, April 28, 2008 and February 2010 acts of concealment occurred.  The first two acts were in April 2008, approximately *eight months* after the last shipment and the "Case closed" e-mail.  The last was in February of 2010, almost two and a half years after the last shipment and "Case closed" e-mail.

> **f) After the central goals of the conspiracy were attained, the subsequent acts of concealment in April 2008, April 28, 2008 and February 2010 cannot, in and of themselves, expand the scope of the conspiracy to include a subsidiary conspiracy to conceal.**

This conclusion finds firm support in the first part of the holding of *Gruenwald*:

> The crucial teaching of *Krulewitch* and *Lutwak* is that after the central criminal purposes of a conspiracy have been attained, a subsidiary conspiracy to conceal may not be implied from circumstantial evidence showing merely that the conspiracy was kept a secret and that the conspirators took care to cover up their crime in order to escape detection and punishment. As was there stated, allowing such a conspiracy to conceal to be inferred or implied from mere overt acts of concealment would result in a great widening of the scope of conspiracy prosecutions, since it would extend the life of a conspiracy indefinitely. Acts of covering up, even though done in the

context of a mutually understood need for secrecy, cannot themselves constitute proof that concealment of the crime after its commission was part of the initial agreement among the conspirators. For every conspiracy is by its very nature secret; a case can hardly be supposed where men concert together for crime and advertise their purpose to the world. And again, every conspiracy will inevitably be followed by actions taken to cover the conspirators' traces. Sanctioning the Government's theory would for all practical purposes wipe out the statute of limitations in conspiracy cases, as well as extend indefinitely the time within which hearsay declarations will bind co-conspirators. *Grunewald v. United States*, 353 U.S. 391, 401-02, 77 S. Ct. 963, 972, 1 L. Ed. 2d 931 (1957).

The April 2008, April 28, 2008 and February 2010 acts of concealment in this case provide less support for a finding of an ongoing conspiracy conceal than those which were found insufficient in *Grunewald:*

First, we have the fact that from the beginning the conspirators insisted on secrecy. Thus the identities of Grunewald and Bolich were sedulously kept from the taxpayers; careful steps were taken to hide the conspiracy from an independent law firm

which was also working on Patullo's tax problems; and the taxpayers were told to make sure that their books did not reflect the large cash payments made to Grunewald. Secondly, after the 'no prosecution' rulings were obtained, we have facts showing that this secrecy was still maintained. Thus, a deliberate attempt was made to make the above-mentioned independent law firm believe that it was its (quite legitimate) efforts which produced the successful ruling. Finally, we have the fact that great efforts were made to conceal the conspiracy when the danger of exposure appeared. For example, Bolich got rid of certain records showing that he had used Grunewald's hotel suite in Washington; Patullo's accountant was persuaded to lie to the grand jury concerning a check made out to an associate of the conspirators; Grunewald attempted to persuade his secretary not to talk to the grand jury; and the taxpayers were repeatedly told by Halperin and his associates to keep quiet. We find in all this nothing more than what was involved in *Krulewitch*, that is, (1) a criminal conspiracy which is carried out in secrecy; (2) a continuation of the secrecy after the accomplishment of the crime; and (3) desperate attempts to

cover up after the crime begins to come to light; and so we cannot agree that this case does not fall within the ban of those prior opinions. *Grunewald v. United States*, 353 U.S. 391, 403, 77 S. Ct. 963, 973, 1 L. Ed. 2d 931 (1957).

The Court in *Gruenwald*, in rejecting the Government's attempt to analogize the facts of *Gruenwald* to that of "kidnappers in hiding, waiting for ransom", reasoned that:

> [K]idnappers in hiding, waiting for ransom commit acts of concealment in furtherance of the objectives of the conspiracy itself, just as repainting a stolen car would be in furtherance of a conspiracy to steal; in both cases the successful accomplishment of the crime necessitates concealment.  More closely analogous to our case would be conspiring kidnapers who cover their traces after the main conspiracy is finally ended—i.e., after they have abandoned the kidnapped person and then take care to escape detection. In the latter case, as here, the acts of covering up can by themselves indicate nothing more than that the conspirators do not wish to be apprehended—a concomitant, certainly, of every crime since Cain attempted to conceal the murder of Abel from the Lord." *Grunewald*

*v. United States*, 353 U.S. 391, 405-06, 77 S. Ct. 963, 974, 1 L. Ed. 2d 931 (1957).

g) **Acts of concealment made during the pendency of the conspiracy may, in certain circumstances, amount to acts in furtherance of the conspiracy**.

The fact that a crime involves act of concealment does not demand a finding that all acts of concealment were in furtherance of the conspiracy. "We cannot accede to the proposition that the duration of a conspiracy can be indefinitely lengthened merely because the conspiracy is kept a secret, and merely because the conspirators take steps to bury their traces, in order to avoid detection and punishment after the central criminal purpose has been accomplished." *Grunewald v. United States*, 353 U.S. 391, 405, 77 S. Ct. 963, 974, 1 L. Ed. 2d 931 (1957).   Nearly every crime involves concealment, and it would be difficult to construct even a hypothetical criminal conspiracy in which concealment did not play a significant role.

"By no means does this mean that acts of concealment can never have significance in furthering a criminal conspiracy. But a vital distinction must be made between acts of concealment done in furtherance of the main criminal objectives of the conspiracy, and acts of concealment done after these central objectives have been attained, for the purpose only of covering

up after the crime." *Grunewald v. United States*, 353 U.S. 391, 405, 77 S. Ct. 963, 974, 1 L. Ed. 2d 931 (1957).

Furthermore, it is important to distinguish acts of concealment that in and of themselves further the conspiracy and acts of the concealment that occur during the pendency of an otherwise ongoing conspiracy. *United States v. Griggs*, 735 F.2d 1318 (11th Cir. 1984) provides an example of acts of concealment that occur during an otherwise ongoing conspiracy. The Government cites *Griggs* for the proposition, "that a coconspirator's warning to another conspirator to 'lay low' was a statement made in furtherance of the charged conspiracy to pass counterfeit money." (Govt. Response pg.14) The Government's description of the holding in *Griggs* is incomplete and misleading. *Griggs* merely held that coconspirator's (act of concealment) warning to "lay low", made while the counterfeiting conspiracy was otherwise ongoing, was admissible under the coconspirator hearsay rule. The holding in *Griggs* is not that the statement (the act of concealment) extended the conspiracy, it is that the statement was made during the conspiracy because there was an overt act in furtherance of the conspiracy *after* the statement.

> [T]he district court held that, at the time of Griggs' visit, the
>
> conspiracy had not yet ended so that the statements were not

made solely for purposes of concealment....The district court's finding that the conspiracy had not yet ended is supported by Griggs' taped admission that in August of 1979, several months after the conversation with Kirschwing at the fishing camp, he went back to the wooded area where he previously had thrown counterfeit money out of his car and tried unsuccessfully to relocate it....In view of this finding that, although presently inactive, the goal of the conspiracy had not yet terminated completely, the district court correctly admitted Sanderson's testimony. *United States v. Griggs*, 735 F.2d 1318, 1325 (11th Cir. 1984).

In this case, unlike *Griggs*, the government can only rely upon the April 2008, April 28, 2008 and February 2010 acts of concealment. There is no evidence or allegation that could support a finding that the conspiracy was otherwise in existence at the times the April 2008, April 28, 2008 and February 2010 acts of concealment took place.

**h) The Court should reject the Government's effort expand the scope of the conspiracy in an attempt shoehorn the facts of this case into the second part of the holding in *Gruenwald*.**

After rejecting the theory that a subsidiary agreement to conceal could be implied from acts of concealment after the crime was completed, the Court

in *Gruenwald* went on to hold that those same acts of concealment could, at least theoretically, be swept into the conspiracy if the purpose of the conspiracy was more expansive. "If the central objective of the conspiracy was to protect the taxpayers from tax-evasion prosecutions, on which the statute of limitations did not run until 1952, and if the 1948 and 1949 'no prosecution' rulings were but an 'installment' of what the conspirators aimed to accomplish, then it is clear that the statute of limitations on the conspiracy did not begin to run until 1952, within three years of the indictment." *Grunewald v. United States*, 353 U.S. 391, 408, 77 S. Ct. 963, 976, 1 L. Ed. 2d 931 (1957).

The key to this type of re-characterization is that it re-characterizes the goals of the conspiracy in a way that necessitates future concealment, such that it converts acts naturally thought of as post-crime concealment into acts in furtherance of the conspiracy.  The Government attempts just such an expansion in this case by re-characterizing the objectives of the conspiracy, beyond what was alleged in the indictment, to include *forever* avoiding the payment of the amount duty legally due on the imported lined paper products. The objective of *forever* avoiding paying the duties owed could not be obtained until statute of limitations on CBP's ability to recover the funds had expired.  Under 19 U.S.C.A. § 1621, "No suit or action to recover

any duty under section 1592(d)…shall be instituted unless such suit or action is commenced within five years after the time when the alleged offense was discovered…"  The net effect is that statute of limitations in anti-dumping conspiracy prosecutions does not expire until *10 years* after the government becomes *aware* of the offense.  In effect, the statute of limitations is at least doubled, and possibly more, depending on when the Government became aware of the offense.  With the conspiracy expanded and extended, the acts of concealment in April 2008, April 28, 2008 and February 2010 are both within the limitations period and in furtherance of the conspiracy because they were necessary to prevent detection and the civil penalties that could come with detection.

The first major problem with the Government's argument, resulting from its attempt to shoehorn the facts of this case into the second prong of *Gruenwald*, is that it exponentially extends the statute of limitations.  In all criminal conspiracy cases alleging theft or fraud where the government also alleges that the goal was to *forever* avoid repayment of their ill gotten gains, the statute of limitations would not start to run until the related statute of limitations had run on the alleged victim's ability to bring a civil case.  For example, nothing would stop the Government from characterizing a conspiracy to steal livestock (18 USC § 667) as a conspiracy to, not only to

14

obtain the livestock, but to forever avoid the possibility of having return the livestock or pay the victim for value of the stolen livestock.    Thus characterized, so long as the statute of limitations had not run on the victim's ability to bring a civil claim, the criminal statute of limitations would not begin to run, and every act during that time that concealed the fraud would be deemed an act in furtherance of the conspiracy.

An even more troubling consequence of adopting the Government's argument, is that it creates the same infinite conspiracy warned against in the first prong of *Gruenwald*.  If the goals of the conspiracy are expanded in the way the Government urges, any acts of the concealment after the crime effectively eliminate the statute of limitations altogether, not only for anti-dumping conspiracy prosecutions, but for every theft and fraud conspiracy. Because of the possibility of restitution to the victim in a criminal conspiracy case, the possibility of having to pay an avoided fine, return stolen money or pay for the value of the stolen items continues as long as the criminal statute of limitations has not expired.  As such, anytime an act of concealment is committed within the statute of limitations, the clock on the running of the statue of limitations in the criminal conspiracy case is reset and the government's ability to obtain restitution for the victims in the criminal case is likewise renewed.    So long as at least one act of

concealment is committed after each reset of the limitations period, the statute of limitations would never expire.

The warnings of the *Gruenwald* Court highlight the dangers of the Government's approach in this case.

> Prior cases in this Court have repeatedly warned that we will view with disfavor attempts to broaden the already pervasive and wide-sweeping nets of conspiracy prosecutions….It is these considerations of policy which govern our holding today. As this case was tried, we have before us a typical example of a situation where the Government, faced by the bar of the three-year statute, is attempting to open the very floodgates against which Krulewitch warned." *Grunewald v. United States*, 353 U.S. 391, 404-05, 77 S. Ct. 963, 974, 1 L. Ed. 2d 931 (1957)

### i) The facts of this case are not similar to the cases relied upon by the Government.

The facts of this case are not similar to the expanded conspiracy proposed in the second prong of the *Grunewald* holding.  In the second prong of *Gruenwald*, the Court assumed that that "the central objective of the conspiracy was to protect the taxpayers from tax-evasion prosecutions" *Grunewald v. United States*, 353 U.S. 391, 408, 77 S. Ct. 963, 976, 1 L. Ed. 2d 931 (1957).  Unlike the facts of this case, which were merely acts to

16

cover the defendant's own tracks, the conspiracy in *Gruenwald* was undertaken on behalf of others, and thus necessarily entailed the defendant *Gruenwald* committing acts of concealment to make good on the large cash fees he received to prevent the criminal prosecutions of the tax payers.

Likewise, the facts of this case are not similar to the tax prosecution cited by the Government in *Forman v. United States*, 361 U.S. 416, 80 S. Ct. 481, 4 L. Ed. 2d 412 (1960) *overruled on other grounds by Burks v. United States*, 437 U.S. 1, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978), where the Court found that the conspiracy in that case:

> "was a continuing one extending from 1942 to 1953 and its principal object was to evade the taxes of Seijas and his wife for 1942-1945, inclusive, by concealing their 'holdout' income. This object was not attained when the tax returns for 1945 concealing the 'holdout' income were filed. As was said in Grunewald, this was but the first step in the process of evasion. The concealment of the 'holdout' income must continue if the evasion is to succeed. It must continue until action thereon is barred and the evasion permanently effected. In this regard, the indictment alleged that the conspiracy to attempt such evasion actually did continue until 1953, when Seijas revealed the

'holdout' income for the first time." *Forman v. United States*,

361 U.S. 416, 423-24, 80 S. Ct. 481, 486, 4 L. Ed. 2d 412

(1960) *overruled on other grounds by Burks v. United States*,

437 U.S. 1, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978).

The routine acts of concealment in this case are of a wholly different character than the affirmative acts of in *Forman* of yearly filing tax returns that failed to disclose the prior "holdout" income.

### 2) The District Court's Order Does Not Toll The Statute of Limitations

### a) The district court's order does not satisfy the requirements of § 3292.

The Government acknowledged that the affidavit in this case contained summary. See (Govt. Response pg.19) The Government went onto argue that the affidavit also contained facts.  However the Government conflates the idea that "we presented facts" with the idea that "we presented evidence sufficient to meet the preponderance of the evidence standard of § 3292". "On this date, we believe this false document was presented at this place" is not the same as "I spoke to Bob Smith, who was at the place and saw this document..."  The detailed information provided in the second example is the type of information required to satisfy the preponderance standard in § 3292.

For example, the FBI agent's affidavit from *Trainor* enclosed as Exhibit 2 to our original motion, goes into great detail about how he knows what he knows. By contrast, in this case, we don't even know whether the information in the affidavit was from the testator agent or the unknown prior agent, let alone where the agent got the information.

This mere summarization of evidence in the Government's possession, standing alone, does not satisfy the Government's burden here anymore than it would in the grand jury context.  Any other interpretation renders the § 3292 preponderance of the evidence standard meaningless.

**b) The § 3292 order does not encompasses § 371.**

The Government's interpretation of § 3292 and the Taiwanese-American Mutual Legal Assistance Treaty as requiring only a very broad disclosure to Taiwan about the types charges that are being sought rather than disclosure of specific crimes to be charged is incorrect. See (Chen's Brief pgs. 13-14 & 19-20).  The Taiwanese-American Mutual Legal Assistance Treaty requires the request include "the specific criminal offenses that relate to the matter and any punishment that might be imposed for each offense." (Article 5 - Form and Contents of Requests", § 2).  The § 3292 order does not set forth a § 371 conspiracy and thus does not toll the statute of limitations for the § 371 conspiracy alleged in Count one.

**3) Conclusion**

The charges against Ms. Chen are barred by the Statute of Limitations. Even assuming the allegations of the indictment to be true, the alleged conspiracy terminated, at the latest, in September 2007, outside the five-year window.

When the Government requests a tolling order, it must prove "by a preponderance of the evidence" that evidence exists in the foreign jurisdiction. The request provided mere allegation, not evidence.

Respectfully submitted, this 19th day of November, 2013.

GARLAND, SAMUEL & LOEB, P.C.

*John A Garland*

_____

JOHN A. GARLAND
Ga. State Bar No. 141226

3151 Maple Drive, NE
Atlanta, Georgia  30305
404-262-2225
Fax 404-365-5041
jag@gsllaw.com

**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
|     Plaintiff, | ) | INDICTMENT NO. |
| | ) | 1:12-CR-350 |
| v. | ) | |
| | ) | |
| JENNIFER CHEN, | ) | |
| | ) | |
|     Defendant. | ) | |

---

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of November, 2013, I electronically filed the above "Defendant Chen's reply to the government's response in opposition to defendant's motion to dismiss count one as barred by the statute of limitations" with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all attorneys and parties of record.

_John A. Garland_

_____
JOHN A. GARLAND
Ga. State Bar No. 141226

3151 Maple Drive, NE
Atlanta, Georgia  30305
404-262-2225

Fax 404-365-5041
jag@gsllaw.com