**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CRIMINAL ACTION FILE NO.** |
| | : | **1:12-CR-350-03-SCJ-AJB** |
| **JENNIFER CHEN,** | : | |
| | : | |
| **Defendant.** | : | |

**UNITED STATES MAGISTRATE JUDGE'S ORDER AND
<u>NON-FINAL REPORT AND RECOMMENDATION</u>**

Defendant Jennifer Chen moves to dismiss the indictment against her on the grounds that it was filed after the applicable statute of limitations had run.  [Doc. 58]. After careful consideration, for the following reasons, the undersigned **RECOMMENDS** that the motion be **DENIED**.

*I.*      *The Indictment*

Chen is charged in Count One of the indictment, which was returned on October 17, 2012.  [Doc. 1].  In that count, Chen is charged with conspiring with others, in violation of 18 U.S.C. § 371, to violate the antidumping customs laws of the United States related to lined paper products manufactured in the People's Republic of China.  [Doc. 1].  The indictment alleges that from "at least in or about May 2006 through in or about February 2010," the defendants conspired:

(a)  to enter, introduce and attempt to enter and introduce merchandise into the commerce of the United States, to wit, certain lined paper products imported from the People's Republic of China, by means of invoices and bills of lading that defendants knew to be fraudulent and false, in violation of Title 18, United States Code, Section 542; and

(b)  to knowingly effect an entry of goods, wares, or merchandise, to wit, certain lined paper products imported from the People's Republic of China into the Ports of Los Angeles, Norfolk, Newark, Atlanta, Oakland and other U.S. ports, at less than the true weight or measure thereof, and with a false classification as to quality or value, and by the payment of less than the amount of duty legally due, in violation of Title 18, United States Code, Section 541.

[Doc. 1 at 1-2].  The indictment further alleges that Chen was the chief financial officer of co-defendant Apego, Inc., a company headquartered in this District, which the indictment describes as being in the business of importing, exporting, and manufacturing stationery products.  [*Id.* at 2-3].  Under the heading "Manner and Means of the Conspiracy," the indictment alleges that the defendants accomplished the objects of the conspiracy by (1) using false entry documents to avoid antidumping duties, [*id.* at 8 (¶ 29)]; (2) purchasing lined paper products in China which were subject to antidumping duties, [*id.* at 8-9 (¶ 30)]; (3) using various strategies to make the lined paper products manufactured in China to appear as if they were manufactured in Taiwan, [*id.* at 9 (¶ 31)]; (4) bribing Taiwanese officials to allow U.S.-bound lined paper products lacking country-of-origin labels or mislabeled "Made in Taiwan" to

2

enter Taiwan from China, [*id.* (¶ 32)]; (5) preparing false and fraudulent documents for

entry into the United States of Chinese-made lined paper products, [*id.* at 9-10 (¶ 33)];

and (6) misrepresenting, concealing, and hiding the true causes and nature of their acts

done in furtherance, and the true nature, of the conspiracy, [*id.* at 10 (¶ 34)].

The indictment then alleges fifty-nine overt acts committed in furtherance of the

conspiracy, all of which occurred more than five years before the return of the

indictment, except the last three, which allege:

> eee.   In or about April 2008, defendant Chi-Cheng Gung, a/k/a "Curtis Gung," as part of an effort to conceal the conspiracy by retrieving a laptop containing incriminating information by his recently terminated assistant, A.C. [an Apego employee], together with defendant Jennifer Chen, staked out and directed other APEGO employees to stake out the apartment of A.C. around the clock, and directed APEGO employees to use all contact information for A.C. at their disposal to try to find A.C.

> fff.   On or about April 28, 2008, defendant Chi-Cheng Gung, a/k/a "Curtis Gung," sent an email to Apego employee E.T., stating that one option of dealing with defendant Gung's recently terminated assistant, A.C., was to "File crime and arrest [A.C.] but think about the Anti-dumping information released to US customs by [A.C.] if she is really piss [sic] off."

> ggg.   In or about February 2010, during the exit interview for an employee departing defendant Apego, defendant Jennifer Chen warned the employee in person at the company's head office in Georgia not to disclose what the employee had learned about the anti-dumping duty evasion scheme.

AO 72A
(Rev.8/8
2)

[*Id.* at 28-29].

## II.     Arguments of the Parties

Chen contends that the indictment against her must be dismissed because the statute of limitations had run when the indictment was returned on October 17, 2012.  [Doc. 58].  Specifically, she alleges that none of the overt acts alleged to have been committed in furtherance of the conspiracy occurred within the five-year statute of limitations, and the final three overt acts, which are alleged to have occurred less than five years before the indictment was returned, do not qualify as acts in furtherance of the completed conspiracy but are rather merely acts to conceal an already completed conspiracy.  [*Id.* at 4-5; Doc. 58-1 at 2-6].  She also argues that the government's request for evidence from Taiwan, which ordinarily would toll the limitations period until the evidence was received, was invalid because the supporting affidavit was insufficient.  [Doc. 58 at 5-7; Doc. 58-1 at 6-21].

The government opposes the motion, arguing that the indictment was not returned after the statute of limitations had run.  [Doc. 71].  It argues that the indictment alleges that the conspiracy lasted until February 2010, which is within the limitations period.  [Doc. 71 at 9].  It next argues that the defendant's efforts to "fracture" the events charged in the conspiracy should be rejected because the acts of concealment

4

were part and parcel of the conspiracy to defeat and evade the antidumping duties, and that concealment was necessary since customs duties can be collected long after the activity resulting in the duty occurs.  [*Id.* at 10-12].  It also argues that one of the express objectives of the conspiracy was concealment, as demonstrated by acts of concealment other than the three overt acts alleged in ¶¶ eee-ggg of Count One.  [*Id.* at 12].  It further argues that the tolling order validly tolled the statute of limitations.  [*Id.* at 16-27].

In reply, Chen argues that the Court need not accept the government's argument that the overt acts occurring outside the limitations period are in furtherance of the charged conspiracy. [Doc. 78 at 1-2].  She then argues that the central criminal purpose of the conspiracy was the importation of lined paper products through the submission of fraudulent documentation and that the purpose was met once the goods made it through customs and to the buyers without having paid what was legally due, which, according to the indictment, occurred between May 2006 and August 2007.  [*Id.* at 5 (citing Doc. 1 at 8)].  She then argues that the three events described in the indictment alleged by the government to be included within the limitations period all were acts of concealment occurring after the central criminal purpose of the conspiracy had ended, and because of that, those three events do not serve to extend the statute of limitations

5

any more than similar acts of concealment were held to not extend the limitations period in *Grunewald v. United States*, 335 U.S. 491, 401-02 (1957).  [*Id.* at 5-10]. Next, Chen argues that the government is attempting to re-characterize the goals of the conspiracy to include post-crime concealment as acts in furtherance of the conspiracy.  [*Id.* at 11-3].  She also complains that extending the duration of the conspiracy due to the government's right to reclaim improperly withheld duties under 19 U.S.C. §§ 1592(d) and 1621, expands the statute of limitations to a potentially unlimited period of time, since the government has five years from the discovery of any fraud to bring suit to recover an unpaid duty. [Doc. 78 at 13-16].  This, she argues, runs contrary to the *Grunewald* Court's admonition that it would not countenance the broadening of "pervasive and wide-sweeping nets of conspiracy prosecutions."  [*Id.* at 16 (quoting *Grunewald*, 353 U.S. at 404)].  She also claims that the conspiracy in the present case was different from that in *Grunewald* and *Forman v. United States*, 361 U.S. 416 (1960), which the government argued supported its position.  [Doc. 78 at 17-18].  Finally, she argues that the § 3292 order did not act to toll the limitations period.  [Doc. 78 at 18-19].

6

## III.    Discussion

The parties agree that the applicable statute of limitations for the crime of conspiracy under 18 U.S.C. § 371 is five years.  18 U.S.C. § 3282(a) (providing that an offender must be prosecuted "within five years next after such offense shall have been committed").  The statute of limitations does not begin to run on a co-conspirator until the final act in furtherance of the conspiracy has occurred or until the co-conspirator withdraws from the conspiracy.  *United States v. Reed*, 980 F.2d 1568, 1584 (11th Cir. 1993); *United States v. Benson*, 846 F.2d 1338, 1340 (11th Cir. 1988).  The requirements of the statute of limitations are satisfied if the government proves that the conspiracy continued into the limitation period.  *See United States v. Arnold*, 117 F.3d 1308, 1313 (11th Cir. 1997); *see also United States v. Gonzalez*, 921 F.2d 1530, 1548 (11th Cir. 1991) (predicate acts for RICO conspiracy occurring outside limitations period could support conviction if conspiracy continued into limitations period).  Thus, a criminal conspiracy continues in time beyond the initial conspiratorial agreement until the objectives of the conspiracy either are abandoned or succeed.  *United States v. Kissel*, 218 U.S. 601, 610 (1910); *United States v. Dynalectric Co.*, 859 F.2d 1559, 1563 (11th Cir. 1988).  But once the objects of the conspiracy succeed or are abandoned, "the mere continuance of the result of [the] crime

7

does not continue the crime . . . for purposes of the statute of limitations." *Id.* at 607; *see also Dynalectric Co.,* 859 F.2d at 1563.  Acts of concealment that are not part of the original conspiracy do not extend the statute of limitations, *Grunewald*, 353 U.S. at 402, but acts of concealment that allow an organization to stay in business can be in furtherance of a conspiracy, *id.* at 406 n.20; *Arnold*, 117 F.3d at 1314 (attempts to silence a potential witness, which allowed the drug organization to maintain its operations, was within scope of drug conspiracy).  *Cf. United States v. Knowles*, 66 F.3d 1146, 1155-57 (11th Cir. 1995) (attorney helping client obtain payment for client's participation in drug importation occurred within the pendency of the conspiracy and was not mere concealment).  The issue was framed by *Grunewald* as follows:

> We cannot accede to the proposition that the duration of a conspiracy can be indefinitely lengthened merely because the conspiracy is kept a secret, and merely because the conspirators take steps to bury their traces, in order to avoid detection and punishment after the central criminal purpose has been accomplished.
>
> By no means does this mean that acts of concealment can never have significance in furthering a criminal conspiracy.  But a vital distinction must be made between acts of concealment done in furtherance of the main criminal objectives of the conspiracy, and acts of concealment done after these central objectives have been attained, for the purpose only of covering up after the crime.

8

*Grunewald*, 353 U.S. at 405; *see also Krulewitch v. United States*, 336 U.S. 440, 442 (1949) (ruling that hearsay statement of coconspirator after she was arrested was not admissible as part of an implicit conspiracy to conceal the crime because "[i]t is beyond doubt that the central aim of the alleged conspiracy—transportation of the complaining witness to Florida for prostitution—had either never existed or had long since ended in success or failure when and if the alleged co-conspirator made the statement attributed to her").

Thus, the Court first must determine the contours or objectives of the relevant conspiracy in order to determine whether the statute of limitations had run by the time the indictment was returned or whether it extended into the period covered by the final three overt acts alleged by the government. *See Dynalectric Co.*, 859 F.2d at 1563. The relevant contours of a conspiratorial agreement in any given case are those charged in the indictment. *Id.* at 1564 (citing *United States v. N. Improvement Co.*, 814 F.2d 540, 542 (8th Cir. 1987); *United States v. Inryco, Inc.*, 642 F.2d 290, 293-94 (9th Cir. 1981); *United States v. Davis*, 533 F.2d 921, 929 (5th Cir. 1976) ("For purposes of the statute of limitations [18 U.S.C. § 3282] the overt acts alleged in the indictment and proved at trial mark the duration of the conspiracy."); *United States v. Helmich*, 704 F.2d 547 (11th Cir. 1983)).

9

In this case, the indictment alleges a conspiracy to introduce and attempt to introduce lined paper products into the United States from the People's Republic of China by means of fraudulent and false invoices and bills of lading and at less than the true weight or measure thereof, with a false classification as to quality or value, and by the payment of less than the amount of duty legally due. [Doc. 1 at 1-2]. Thus, an expressed object of the conspiracy was to evade the lawful duties owed on the imported goods. The Court concludes that the indictment was timely returned because the three overt acts occurring less than five years before the return of the instant indictment were in furtherance of one of the charged conspiracy's objectives: underpayment of lawful customs duties.

Three binding cases support this conclusion: *Forman v. United States*, 361 U.S. 416 (1960); *United States v. Del Valle*, 587 F.2d 699 (5th Cir. 1979); and *United States v. Diez*, 515 F.2d 892 (5th Cir. 1975).[1] First, in *Forman*, the defendants were partners in a pinball machine operation, receipts from which were to be divided equally among the partners and the owners of the locations where the machines were located, but between 1942 and 1945, the defendants robbed the machines by extracting

---

[1]        In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

AO 72A
(Rev.8/8
2)

"holdout" money from the most profitable locations without sharing the receipts with the location owners.  Although the defendants split these proceeds, the ill-gotten funds were not disclosed on the defendants' partnership's books, nor on the tax returns that should have been filed between 1943 and 1946.  In 1948, 1951, and 1952, false statements were made to the IRS concerning the holdout income.  The indictment for conspiring to evade income taxes was returned in 1953.  *Forman*, 361 U.S. at 418-21.

The *Forman* Court held that the indictment was not barred by the statute of limitations because the object of the conspiracy was not attained when the tax return for 1945 was filed.  Rather, the concealment of the holdout income had to continue if the evasion was to succeed until an action on the tax liability was barred and the evasion permanently effected.  *Id.* at 423-24.  Similarly, in the present case, one of the objects of the conspiracy was to pay less duty on the lined paper products than was due on such products from the People's Republic of China.  Attempts to silence "A.C." and warning another former employee not to disclose the scheme were necessary components of the scheme to avoid the appropriate duty since under 19 U.S.C. §§ 1592(d) and 1621, in cases of fraud, the government has five years from the date the fraud was discovered to attempt to collect any duty that was improperly evaded.

11

This conclusion does not, contrary to Chen's argument, render the statute of limitations unending or illusory.  First, the facts of this case do not show a limitless delay in bringing the instant charges.  Even under the defendant's arguments, the indictment was filed, at most, five months after the statute of limitations should, in her opinion, be calculated as having run.

Second, considering the time periods of §§ 1592(d) and 1621, during which the government could pursue civil collection of any unpaid duties, to frame the scope of the conspiracy charged in this case is not only not unfair, but it makes perfect sense. Under ordinary circumstances, the government must sue to civilly collect any unpaid duties within five years after the event giving rise to the liability, unless there is fraud, and in that instance, the government has five years from the date of the discovery of the fraud to file suit to recover the unpaid duty.  19 U.S.C. § 1961.  Even in cases involving fraud, the government still is held to exercise reasonable care and diligence in seeking to learn the facts that disclose the alleged wrong.  *United States v. R.I.T.A. Organics, Inc.*, 478 F. Supp. 75, 77 (N.D. Ill. 1980) (cited in *United States v. Complex Mach. Works Co.*, 937 F. Supp. 943, 945 n.4 (C.I.T. 1996) ("*R.I.T.A.* holds only that where Customs should have known of the existence of a fraud, it may not assert the discovery exception for a date past the time when it should have been discovered.")); *see also*

12

*Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946) (Under the federal doctrine of fraudulent concealment, the statute of limitations is tolled when the party injured by the fraud "remains in ignorance of it without any fault or want of diligence on his part."). Thus, *Forman* instructs the denial of Chen's motion in this case.

*Del Valle* is also instructive here. In *Del Valle*, the defendants were charged with mail fraud in connection with a scheme to defraud auto insurance carriers, among others, as well as conspiracy to do the same. 587 F.2d at 700. At trial, the government sought to introduce testimony that one of the defendants sought to influence witnesses who were to testify before the investigating grand jury, and the admissibility of that testimony turned on whether the attempted influence of witnesses was in furtherance of the conspiracy or merely an effort to conceal an already completed conspiracy. In finding that the testimony was in furtherance of an ongoing conspiracy, the *Del Valle* court concluded that the conspiracy charged was not aimed at accomplishing a single objective with a precise moment of termination but rather had a continuing sequence of objectives. *Id.* at 704. Moreover, the role in the conspiracy of the defendant who sought to influence the testimony "necessitated that he protect it from those investigative agencies which threatened its continuation. He was its shield. His attempts to influence witnesses were not acts of concealment related only to a past

13

objective.  They were parts of continuing activity that was essential to and therefore in furtherance of the survival of an ongoing operation." *Id.*  Similarly, in the present case, it was necessary for the conspirators to maintain the silence of those other individuals who were aware of the duty-evading scheme.

Finally, in *Diez*, a case heavily relied upon by the *Del Valle* court, *see Del Valle*, 587 F.2d at 704 (quoting *Diez*, 515 F.2d at 987), the defendants were charged with conspiracy to defraud the United States by impeding the functions of the IRS in the collection of income taxes, as well as substantive tax evasion.  515 F.2d at 895.  After their convictions, they challenged the admissibility of statements of coconspirators admitted at trial, and the former Fifth Circuit considered whether the statements were in furtherance of the charged conspiracy or concerned only concealment of a completed crime.  *Id.* at 896.  The *Diez* court explained that (1) in *Krulewitch*, the conspiracy to transport a woman across state lines had ended by the time the arrested coconspirator made her statement, *Diez*, 515 F.2d at 897; (2) in *Lutwak v. United States*, 344 U.S. 604, 605 (1953), the conspiracy to defraud the United States by obtaining the illegal entry into the country of three aliens as spouses of honorably discharged veterans was completed when the immigration officials were deceived and permitted the aliens to enter, *Diez*, *id.*; and (3) in *Grunewald*, the conspiracy to defraud the United

14

States to prevent tax prosecutions was complete when, through bribes, the IRS issued

"no prosecution" letters, *Diez*, *id.*  The *Diez* Court distinguished the conspiracy charged

in the case then before it:

> On the other hand, in the present case the central aim of the
> conspiracy was to deceive officials of the Internal Revenue Service,
> thereby inducing them to accept fraudulent tax returns as truthful and
> accurate.  In light of the substantial possibility that the returns would be
> audited and investigated, the filing of the returns did not fully accomplish
> the purpose of the main conspiracy, which, by its very nature, called for
> concealment.

*Diez*, 515 F.2d at 897-98 (footnote omitted).  The *Diez* Court added that the conspiracy

in *Forman* was "very similar" to the one charged in *Diez*.  *Id.* at 898.

The conspiracy charged in the pending indictment has the same attributes as the

one charged in *Diez*.  While one of the objects was to import lined paper products using

false documentation—and that object was completed at the acceptance of the goods'

entry into the United States—the conspiracy also included avoiding paying the

increased duty due on lined paper products manufactured in the People's Republic of

China.  Because the duties can be collected even after the goods have entered the

United States, an integral part of the conspiracy was the continued concealment of the

scheme to evade the duty.

15

As a result, the conspiracy count in the indictment is not subject to dismissal on statute-of-limitations grounds.

Chen alternatively argues that the tolling order issued under 18 U.S.C. § 3292(a)(1) was insufficient because it was issued based on an affidavit that was not properly sworn; relied in part on information supplied by other agents and thus was double hearsay; was conclusory; was inapplicable to the conspiracy charge eventually brought in this case; and was pretextual. [Doc. 58-1 at 15-21]. Because the undersigned has rejected Chen's arguments that the statute of limitations had run on the conspiracy count by the time the indictment was returned, the Court need not address the arguments in detail.

Section 3292(a)(1) provides that

> [u]pon application of the United States, filed before return of an indictment, indicating that evidence of an offense is in a foreign country, the district court before which a grand jury is impaneled to investigate the offense shall suspend the running of the statute of limitations for the offense if the court finds by a preponderance of the evidence that an official request has been made for such evidence and that it reasonably appears, or reasonably appeared at the time the request was made, that such evidence is, or was, in such foreign country.

18 U.S.C. § 3292(a)(1).

AO 72A
(Rev.8/8
2)

In *United States v. Trainor*, 376 F.3d 1325 (11th Cir. 2004), the Eleventh Circuit

held that

> when seeking to toll a statute of limitations under § 3292, [the
> government] must provide something with evidentiary value—that is,
> testimony, documents, proffers, and other submissions bearing some
> indicia of reliability—tending to prove it is reasonably likely that evidence
> of the charged offenses is in a foreign country . . . . [T]he § 3292
> preponderance of the evidence requirement is quite broad and the
> [g]overnment may satisfy its burden by including a sworn or verified
> application containing the necessary factual information, testimony by
> [g]overnment officials, affidavits, declarations, exhibits, or other materials
> of evidentiary value . . . . [T]he [g]overnment's evidence could even
> include hearsay evidence. Although this "is not a high standard of proof,"
> neither is it "a toothless standard." *United States v. Askew*, 193 F.3d
> 1181, 1183 (11th Cir. 1999). Accordingly, any evidentiary submission
> must meet a minimum threshold of reliability.

376 F.3d at 1332-33.

Here, the government submitted evidence that met this minimum threshold of

reliability. First, the agent's declaration was reliable because it complied with

28 U.S.C. § 1746 in that it was in writing and signed by him under penalty of perjury.

That code section provides, in material part,

> Wherever, under any law of the United States or under any rule,
> regulation, order, or requirement made pursuant to law, any matter is
> required or permitted to be supported, evidenced, established, or proved
> by the sworn declaration, verification, certificate, statement, oath, or
> affidavit, in writing of the person making the same (other than a
> deposition, or an oath of office, or an oath required to be taken before a

17

specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:

. . .

If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.  Executed on (date).

(Signature)".

28 U.S.C. § 1746(2).  Neither the code section nor the cases cited by Chen require the § 1746 averment to be in the *handwriting* of the person attesting to the truth.  While *Holloman v. Jacksonville Housing Auth.*, No. 06-10108, 2007 WL 245555, at *2 (11th Cir. Jan. 30, 2007), provides that "[f]ederal law does provide an alternative to making a sworn statement, but requires that the statement include a handwritten averment, signed and dated, that the statement is true under the penalties of perjury," (citing § 1746), unpublished opinions are not binding precedent.  *United States v. Izurieta*, 710 F.3d 1176, 1179 (11th Cir. 2013); *see also* 11th Cir. R. 36-1, IOP 6 ("Citation to Unpublished Opinions by the Court.  The court generally does not cite to its 'unpublished' opinions because they are not binding precedent."). *McCaskill v. Ray*, 279 Fed. Appx. 913, 915 (11th Cir. May 30, 2008), provides no guidance because the

18

defect in that case was the unsworn nature of the statement.  *West v. Higgins*, 346 Fed. Appx. 423, 426 (11th Cir. Sept. 21, 2009), appears to have been decided on the same basis, that the petitioner did not swear to his assertions or provide a sufficient alternative under § 1746.  Instead, the Court views as persuasive the reasoning of Judge Steele of the Southern District of Georgia, who held when confronted with a similar argument:

> According to defendant, 28 U.S.C. § 1746 prohibits typewritten or computer-generated declarations, but instead mandates that the entire declaration must be handwritten to be properly considered.  Because the body of each of these declarations is typewritten, with only the signature and date being handwritten, [defendant] maintains that all these declarations must be stricken.

> This argument is a novel one.  After all, this Court routinely reviews and considers typewritten declarations on summary judgment, and in fact greatly prefers that format to handwritten declarations that may be afflicted by legibility and penmanship infirmities.  The Court does not recall ever fielding an objection that § 1746 mandates exclusion of any declaration whose body is typewritten or computer-generated.   If defendant is correct, then the entire bar of this District Court has been doing it wrong for all these years and the judges of this District Court have erred innumerable times by weighing improper declarations.  More to the point, applicable authorities do not support [defendant]'s position.  Section 1746 does not use the words "handwriting" or "handwritten."  At least one appeals court has rejected the interpretation of the statute that [defendant] champions.  *See Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992) ("[W]e believe that the stated purpose of 28 U.S.C. § 1746 is accomplished whether the verification statement is handwritten or typewritten and simply undersigned.").  Moreover, the unpublished

19

Eleventh Circuit case on which defendant relies does not expressly require that the entire declaration be handwritten in order to pass muster under § 1746; rather, that decision simply mentions in passing that "[f]ederal law does provide an alternative to making a sworn statement, but requires that the statement *include a handwritten averment, signed and dated*, that the statement is true under the penalties of perjury." *West v. Higgins*, 346 Fed. Appx. 423, 426 (11th Cir. [Sept. 21,] 2009) (emphasis added). By all appearances, a handwritten signature and date (which these declarations have) would be sufficient to satisfy the *West* interpretation in dicta of § 1746 that a "handwritten averment, signed and dated," is necessary. Besides, surely the Eleventh Circuit would have used more fanfare had it intended to construe § 1746 as abolishing the use of typewritten declarations in federal court.

*Sharpe v. Global Sec. Intern.*, 766 F. Supp. 2d 1272, 1279-80 (S.D. Ala. 2011); *see also Paters v. United States*, 159 F.3d 1043, 1052 (7th Cir. 1998) (relying on *Browman*).

Thus, the Court rejects Chen's § 1746 challenge to the § 3292 application.

Chen also contends that because the affiant, Agent Clark, relied on information from another agent, the District Court could not have found the "double hearsay" to be reliable. However, federal courts routinely rely upon affidavits from law enforcement officers which are based in whole or in part on information relayed by other, non-affiant officers. *United States v. Anderton*, 136 F.3d 747, 749 (11th Cir. 1998) (stating that " '[o]bservations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number' as long as the affiant states that he is relying on other officers in the affidavit")

20

(quoting *United States v. Kirk*, 781 F.2d 1498, 1505 (11th Cir. 1986)); *see also Solis-Alarcon v. United States*, 514 F. Supp. 2d 185, 193, 197-98 (D.P.R. 2007) (agents who conducted search reasonably relied on information passed on by other agents who, after surveillance of suspect driving vehicle and parking it at location of search, believed suspect to reside at residence searched).  As a result, the affidavit was not faulty in that it relied on information garnered from other law enforcement officers.

In addition, the affidavit was sufficiently detailed.  It set out the persons and entities the affiant believed were involved in violations of the antidumping scheme. It detailed how many shipments and the estimated value of the lined paper products which the government believed were involved in the scheme.  It outlined the arrangement between Watanabe, a paper product manufacturer in the People's Republic of China, and Apego, noting that the antidumping duties made the deal much less financially attractive to Apego.  It set out that the subjects of the investigation then hired extra labor and obtained warehouse space in Taiwan to "rework" the goods to make them appear as if they were made in Taiwan, and stated that either false covers and backs were put on the products to falsely show Taiwan as the country of origin, or the subjects had Watanabe place false labels on the products.  The affidavit set out a bribery scheme involving Taiwanese customs officials, and explained after that scheme

21

was uncovered, other customs ports in Taiwan (with accompanying bribes) were located to allow the scheme to continue.  Last, it explained what information was likely to be located in Taiwan.  [Doc. 61 at 2-9].  As a result, the affidavit contained sufficient details to demonstrate its reliability, and set forth sufficient facts to establish that the evidence sought would be in Taiwan.

Next, Chen argues that the tolling order was invalid because the application which supported it did not mention a § 371 conspiracy.  Chen does not cite any cases in support of this argument, and courts have rejected similar arguments.  *United States v. Ratti*, 365 F. Supp. 2d 649, 656 (D. Md. 2005) ("So long as the offenses designated in the request to the foreign government and in the Section 3292 application are reasonably specific to elicit evidence probative of the offenses under investigation, the application is in order."); *United States v. Neill*, 952 F. Supp. 832, 832-33 (D.D.C.1996) (stating that "[w]hile the plain text of the statute is . . . offense-specific, such specificity does not require that a foreign evidence request expressly list by citation the alleged statutory violations in order for a foreign evidence request to pass muster under 18 U.S.C. § 3292"); *see also United States v. Arrington*, No. 8:13CR146, 2013 WL 5963140, at *10 (D. Neb. Nov. 7, 2013) ("Although mail fraud and conspiracy to commit mail fraud were not specifically referred to by statute in the

22

United States' Application as offenses under investigation, the description of the scheme to defraud contained in the Application and Declaration, along with the nature of the documents requested in the foreign jurisdictions, was sufficiently specific as it suggested that wire and mail fraud were being investigated and were related to the scheme to defraud investors."); *United States v. Swartzendruber*, No. 3:06-cr-136, 2009 WL 485144, at *5 (D.N.D. Feb. 25, 2009) (rejecting defendant's argument that tolling application was invalid because conspiracy to defraud the United States was not listed in the application to toll the statute of limitations or in the tolling Order, and finding "persuasive the reasoning of other courts interpreting 18 U.S.C. § 3292 and concluding that every single offense need not be listed by statutory citation or with exact specificity before a court may find the statute tolled for an offense" and that "so long as the offenses designated in the application are 'reasonably specific to elicit evidence probative of the offenses under investigation,' " the statute of limitations is tolled) (citations omitted).

In the present case, the tolling order issued by Judge Story contained an express citation to 18 U.S.C. § 371. [Doc. 71-1 at 2]. Moreover, the MLAT agreement at issue in this case, [Doc. 71-2], does not limit the cooperation to expressed offense citations, but rather covers the "subject matter and nature of the investigation, prosecution, or

23

proceeding, including the specific criminal offenses that relate to the matter," and provides that the information so gained could not be used in "any investigation, prosecution, or proceeding other than that described in the request." [*Id.* at 13, 14]. The request to Taiwan included allegations that the "[s]ubjects and conspirators" were engaged in the conduct then under investigation. [Doc. 61 at 18-19]. The request for and the use of the information satisfied the MLAT when read in a non-formulaic manner, since the MLAT speaks of the subject matter and nature of the investigation.

Finally, Chen argues that tolling application was a ruse or pretext because when following her arraignment she asked for the information received pursuant to the request, she was told it had not been translated from Chinese. Thus, she argues, the government did not even use the information. The government responds that there were other aspects of the MLAT request, including arranging for witness interviews. Chen offers no case law supporting her argument that a pretextual MLAT request voids any otherwise valid request. The Court's independent research shows only one case arguably relevant, but upon further examination, unhelpful to Chen. In *United States v. Wilson*, 322 F.3d 353 (5th Cir. 2003), the defendant's conviction was reversed on statute-of-limitations grounds where the government did not prove that it had in fact

made an official § 3292 request to the foreign government, and thus the statute was not tolled.  This is inapposite to the present case, and thus, Chen's argument is rejected.

### IV.   Conclusion

For all of the above reasons, the undersigned **RECOMMENDS** that Chen's motion to dismiss the indictment, [Doc. 58], be **DENIED**.

The Court will hold a hearing on **March 24, 2014, at 10:00 a.m.** on the pending motions for Rule 15 depositions.

**IT IS SO RECOMMENDED AND ORDERED**, this the 14th day of February, 2014.

_____
ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/8
2)